**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.**



Russ Kendig
United States Bankruptcy Judge

**Dated: 03:46 PM February 14, 2017**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| SCOTT D. SCHROEDER, | ) | CASE NO. 14-62604 |
| | ) | |
| Debtor. | ) | ADV. NO. 16-6017 |
| _____ | ) | |
| ANNE PIERO SILAGY, | ) | JUDGE RUSS KENDIG |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| ROBBYE SCHROEDER, | ) | **(NOT FOR PUBLICATION)** |
| | ) | |
| Defendant. | ) | |

Plaintiff, the Chapter 7 trustee Anne Piero Silagy ("Trustee"), filed a motion for summary judgment on fraudulent transfer claims mounted against Debtor's now ex-wife ("Defendant") in the amended complaint. Defendant opposes the motion.

The court has subject matter jurisdiction of the underlying bankruptcy case pursuant to 28 U.S.C. § 1334 and the general order of reference entered by the United States District Court for

1

the Northern District of Ohio on April 4, 2012.  This is a statutorily core proceeding under 28 U.S.C. § 157 and the court has authority to issue final entries.  Venue in this district is appropriate under 11 U.S.C. § 1409.  The following constitutes the court's findings of fact and conclusions of law under Bankruptcy Rule 7052.

This opinion is not intended for publication or citation.  The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

## FACTS

Debtor and Defendant married in 2000.  They have three children.  Debtor worked in the financial services industry; Defendant has a master's degree in education and taught English until 2010.  After that, she home schooled their children and freelanced as a writer.  The parties moved from California to Ohio in 2013 when Debtor merged his business with a Canton business.  At the time, Debtor faced several lawsuits.  In the spring of 2014, one of those lawsuits resulted in a $500,000.00+ judgment against Debtor. (Def.'s Depo. Ex. 2, ECF No. 11-2)  The parties later moved to Texas.  On December 1, 2014, Debtor filed an individual chapter 7 bankruptcy petition and eventually waived his discharge in the case.  The parties divorced in 2015 although they continue to cohabitate.

Three transfers are at the heart of Trustee's amended fraudulent transfer and preference complaint.

## Transfer #1

Debtor and Defendant maintained a joint savings account ("Joint Savings") and a joint checking account ("Joint Checking"). Between January 31, 2014 and April 10, 2014, the only deposits into the Joint Savings were electronic transfers from the Joint Checking account totaling $103,000.00.  The funds came from Debtor's employment earnings.  On July 30, 2014, Debtor opened individual checking and savings accounts in Defendant's name.  Defendant was aware of Debtor's actions.  Defendant contends, and Trustee does not dispute, the accounts were opened on the advice of counsel to segregate her individual funds from Debtor's in light of judgments against Debtor.  On August 1, 2014, the entire balance of the Joint Savings, $60,046.40, was put into the Defendant's individual savings account.  Trustee seeks recovery of this $60,046.40 transfer.

Trustee's amended complaint contains nine counts related to the $60,046.40 transaction ("Transfer #1), including state and federal fraudulent transfer claims and a preference action under 11 U.S.C. § 547(b).

## Transfer #2

On or about September 9, 2014, Debtor wrote a $3,000.00 check (# 1229) on his individual JPMorgan Account, payable to Defendant.  FirstMerit Bank negotiated the check on September 12, 2014.  It is not clear what happened to the money.  When asked about the check,

2

Defendant testified it was "probably [used] for some living related expenses." (Def's. Depo. 34:6-7, ECF No. 11-1)

Trustee's amended complaint contains three counts for recovery of this transfer ("Transfer #2"), two fraudulent transfer counts under federal law and a preference count.

**Transfer #3**

In October 2014, Debtor sold an all-terrain vehicle for $6,000.00 and allegedly transferred the proceeds from the sale to Defendant. Defendant acknowledges that Debtor says he gave her the money but cannot specifically identify a corresponding deposit. Trustee points to a $7,023.00 deposit into Defendant Accounts on November 20, 2014, suggesting this deposit contains the sale proceeds.

Trustee's amended complaint includes three counts, two fraudulent transfer and one preference, for recovery of this transfer ("Transfer #3").

Defendant's defense to the alleged fraudulent transfers centers on her claim that she provided value for any transfers she received. On April 30, 2014, Defendant deposited $169,137.02 ("Deposit") into the Joint Checking. $167,092.02 came from the return on an individual business investment Defendant made in 2004 ("Geary Street") and the $2,045.00 balance was from an unknown source. Defendant continually references the investment as "hers," treating it as her separate property. Prior to the Deposit, the Joint Checking balance was roughly $4,340.00. Between the Deposit and the transfer in question, the joint checking account was used to pay a myriad of living expenses, including mortgage payments, groceries, dining out, utilities, retail purchases, etc. Other deposits were made into the Joint checking account after the Deposit, totaling approximately $25,000.00. The Deposit sustained the family for several months. On July 31, 2016, the joint checking account balance was $35,663.89. On August 1, 2014, Debtor transferred $25,000.00 from the Joint Checking to Defendant's individual checking account. Trustee does not seek recovery of this transfer. With that transfer, funds from the Deposit were depleted. After that transfer, the balance in the Joint Checking was less than $8,000.00.

## DISCUSSION

Fraudulent transfer claims may be premised on either state or federal law. Section 548 of the bankruptcy code sets forth the federal claim while Ohio Revised Code § 1336.04 and 1336.05 provide the basis for a state law claim. Under either arm, two routes to recovery exist, one based on actual fraud and one on constructive fraud. In the present motion for summary judgment, Trustee first looks to actual fraud. 11 U.S.C. § 548(a)(1)(A); O.R.C. § 1336.04(A)(1). If not successful, she moves for summary judgment on a constructive fraud theory. 11 U.S.C. § 548(a)(1)(B); O.R.C. § 1336.05(A). The federal and state statutes are "substantially similar both in terms of rights, remedies, and defenses." Slone v. Lassiter (In re Grove-Merritt), 406 B.R. 778, 789 (Bankr. S.D. Ohio 2009) (citations omitted).

## I. Actual Fraud

Section 548(a)(1)(A) allows a trustee to avoid a transfer made "on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—(A) made such transfer . . . with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made." The initial burden of proof, by a preponderance of the evidence, rests with Trustee. Silagy v. Gagnon (In re Gabor), 280 B.R. 149, 155 (Bankr. N.D. Ohio 2002). The court will examine the three core elements, the transfer, the timing and the intent. Defendant does not challenge any of these elements and does not contest that the transfers were fraudulent. Instead, she focuses on defending the transfers from recovery under 11 U.S.C. § 548(c).

### A. Transfer

"Transfer" is a defined term under the bankruptcy code, defined as "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with—(i) property; or (ii) an interest in property. 11 U.S.C. § 101(54) Debtor's actions in moving monies from either the parties' joint or his own individual accounts to his wife's individual accounts altered the nature of his interest in the funds, leaving him without access, which also moved it from the reach of his creditors. Consequently, Transfers #1 and #2 qualify as transfers under 11 U.S.C. § 548(a)(1)(A).

Transfer III is not as straightforward as Transfers #1 and #2. Trustee introduced Defendant's deposition testimony in support of the transfer of $6,000.00 in proceeds from the sale of a Razor ATV to Defendant. Defendant does not dispute the sale, nor does she dispute that Debtor contends he gave her the money. However, Defendant does not admit to receiving the proceeds, stating "He did something with the proceeds; I can't trace what he did. I looked through my account and I can't trace where he put it." (Def. Depo. 82:23–83:12) Trustee suggests that the proceeds comprise the basis of a $7,023.36 deposit into Defendant's individual checking account on November 20, 2014.

On a motion for summary judgment, the movant must demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Trustee did not meet this burden. There is a clear question of fact surrounding Transfer #3. Trustee contends the Razor was sold in October 2014,[1] the deposit was made in November. Defendant acknowledges the sale and Debtor's claim that he gave her the proceeds but her testimony does not confirm that she received the proceeds in the November deposit or at any other time. The court cannot grant summary judgment on Transfer #3.

### B. Timing

The bankruptcy code contains a two year reach back period for avoidance of allegedly fraudulent transfers. 11 U.S.C. § 548(a). State law provides a four year look back period.

---

1 Defendant testified the sale occurred in November. (Def. Depo. 83:6)

O.R.C. § 1336.04(A). Defendant does not argue that any of the transfers occurred outside the applicable time frames. The timing element is satisfied.

### C. Intent

At her deposition, Defendant testified "[Debtor's] attorney had advised him to move my funds out of his accounts so that my funds wouldn't be seized with his funds . . . his attorney advised him that my funds should be separate from him so that when they seized the assets, they would only take his." (Def. Depo. 53:5-14) Trustee contends this is direct evidence of fraudulent intent. The court agrees.

Viewed in the light most favorable to Defendant, the statement implies Debtor's actions were altruistically motivated. However, the uncontroverted facts do not support this as a reasonable inference. Prior to Transfer #1, there is no evidence Defendant had any individual or separate accounts to segregate any of her assets. Debtor opened individual accounts for her with an advancing threat of collection. Transfer #1 consisted of funds from the joint savings account containing only Debtor's earnings. The transfer did not contain any funds traceable to Defendant. Defendant's statement acknowledges Transfer #1 was a calculated effort by Debtor to shield money that he had access to from the reach of his creditors. The facts demonstrate Debtor made Transfer #1 with the intent to hinder, delay or defraud his creditors. Trustee proved the existence of a fraudulent transfer for Transfer #1.

The court is not convinced Defendant's testimony demonstrates actual fraudulent intent for Transfers #2 and #3. Her statement expressly relates to comingled funds and, in context, provides explanation for transfers made contemporaneously with opening the new accounts. Debtor made Transfers #2 and #3 after the accounts were open. Moreover, the later transfers were not comingled funds. Transfer #2 came from Debtor's individual account and the $6,000.00 transfer resulted from the sale of Debtor's Razor ATV. Transfers #2 and #3 could not have been attempts to protect Defendant's separate assets because the funds were never hers. Consequently, Defendant's testimony does not evidence actual fraudulent intent for Transfer #2 or Transfer #3.

Since direct evidence of actual fraudulent intent is not available for Transfers #2 and #3, Trustee can rely on the badges of fraud to infer actual fraudulent intent. Schilling v. Heavrin (In re Triple S Rest., Inc.), 422 F.3d 405, 414 (6th Cir. 2005). If Trustee demonstrates evidence of fraudulent intent through these factors, the burden shifts to Defendant to dispute the fraudulent intent. Id. Oft cited badges of fraud, taken from Ohio law, include:

> (1) Whether the transfer or obligation was to an insider;
> (2) Whether the debtor retained possession or control of
>    the property transferred after the transfer;
> (3) Whether the transfer or obligation was disclosed or
>    concealed;
> (4) Whether before the transfer was made or the obligation
>     incurred, the debtor had been sued or threatened with suit;

5

(5) Whether the transfer was of substantially all of the assets of the debtor;
(6) Whether the debtor absconded;
(7) Whether the debtor removed or concealed assets;
(8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the obligation incurred;
(9) Whether the debtor was solvent or became insolvent shortly after the transfer was made or the obligation was incurred;
(10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred; and
(11) Whether the debtor transferred the essential assets of the business to a lienholder who transferred the assets to an insider of the debtor.

O.R.C. § 1336.04(B), Grove-Merrit, 406 B.R. 778, 794.

Trustee pointed to several uncontested badges, including (1) Defendant was an insider as defined by 11 U.S.C. § 101(45), Debtor made the transfers after a $500,000+ judgment was entered against him, all the transfers were made within 122 days of his bankruptcy filing,[2] and he was insolvent when he made the transfers. Trustee also relies on Defendant's explanation for the transfer, to protect "her" funds from his creditors post-judgment, as evidence of his intent. These badges of fraud sufficiently indicate fraudulent intent. Consequently, the burden of proof shifts to Defendant to disprove Debtor did not act with fraudulent intent when he made the transfers.

Defendant does not refute Trustee's fraudulent transfer case. Her defense is built on the good faith affirmative defense in 11 U.S.C. § 548(c), which shelters fraudulent transfers from recovery. Since Defendant offers no countervailing evidence to negate Trustee's case, the court finds Trustee demonstrated, through the badges of fraud, that Debtor made these transfers with the intent to hinder, delay or defraud his creditors.

With the above findings, the court concludes that Trustee succeeded in proving that Transfers #1 and #2 were fraudulent. Since she did not prove the existence of a transfer between Debtor and Defendant for Transfer #3, Trustee's claim under actual fraud fails.

## II. Constructive fraud

Trustee alternatively argued that the transfers were constructively fraudulent under 11 U.S.C. § 548(a)(1)(B). Having found actual fraud for Transfers #1 and #2, the court will examine this argument for only Transfer #3. Section 548(a)(1)(B) allows a trustee to avoid a transfer made or incurred within two years of the petition if the debtor transferred property and received less than a reasonably equivalent value in exchange and was either insolvent on the date of the transfer, or became insolvent as a result. Trustee bears the burden of proof by a preponderance of the evidence. Id. at 793.

---

2 Transfers #2 and #3 were made much closer to the bankruptcy filing.

Like actual fraud, Trustee must demonstrate that a transfer occurred. For the same reasons set forth above, the court cannot find Trustee succeeded to show an absence of fact that a transfer occurred between Debtor and Defendant for Transfer #3. Trustee's constructive fraud claim fails for Transfer #3.

### III.   § 548(c) defense

Section 548(c) provides a shelter from recovery of fraudulent transfers. In pertinent part, it provides that "a transferee or obligee of such a transfer or obligation that takes for value and in good faith has a lien on or may retain any interest transferred or may enforce any obligation incurred, as the case may be, to the extent that such transferee or obligee gave value to the debtor in exchange for such transfer or obligation." Defendant argues Trustee cannot recover the fraudulent transfers because she provided value in good faith: (1) before the transfer, she had deposited over $169,000.00 of her own money into the Joint Checking account and, with Transfer #1, received only $60,046.40 in return, and (2) she also gave value when she used the transferred funds to pay for reasonable, necessary household and family expenses. She contends that intra-familial transfers of the kind involved in the complaint are not fraudulent. The burden of proof on the § 548(c) defense rests with Defendant as transferee. Wilson v. Carman (In re Blazo Corp.), 73 F.3d 361, 1995 WL 764130, *3 (6th Cir. 1995) (citation omitted) (unpublished); Kaler v. McLaren (In re McLaren), 236 B.R. 882 (Bankr. D. N.D. 1999).

#### A.   Value

##### i.   Transfer #1

The court must determine if Defendant provided value to Debtor in exchange for the $60,046.40 transfer. Value is a statutorily defined term meaning "property, or satisfaction or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor." 11 U.S.C. § 548(d)(2)(A). "Value" in § 548(c) and "reasonably equivalent value" in § 548(a)(1)(B) are substantially the same. Grove-Merritt, 406 B.R. 778, 811 (citing Rieser v. Hayslip (In re Canyon Sys. Corp.), 343 B.R. 615, 650-51 (other citation omitted)).

The concept of reasonably equivalent value is a comparison of the value of what was transferred against the value of what was received. Congrove v. McDonald's Corp. (In re Congrove), 222 Fed.App'x 450 (6th Cir. 2007) (unpublished) (citing Corzin v. Fordu (In re Fordu), 201 F.3d 693, 707-03 (6th Cir. 1999)). Often, the value of what was transferred is cast as whether Debtor received an economic benefit from the transfer, focusing "on the net effect of the transfers on the debtor's estate." In re Dirks, 407 B.R. 442, 2009 WL 103606, *9 (B.A.P. 6th Cir. 2009) (unpublished) (citations omitted); Allard v. Hilton (In re Chomakos), 170 B.R. 585, 590 (Bankr. E.D. Mich. 1993). The circumstances surrounding the transfers are material. Southeast Waffles, LLC v. U.S. Dep't of Treasury (In re Southeast Waffles, LLC), 460 B.R. 132, 139 (B.A.P. 6th Cir. 2011) (citations omitted). The Sixth Circuit explains

7

> Instead, we look to the net effect of the transfer or obligation on the debtor's estate and, more specifically, on the remaining funds available to the unsecured creditors. In re Congrove, 222 Fed. App'x 450, 454 (6th Cir. 2007); *see also* In re Northern Merch., Inc., 371 F.3d 1056, 1059 (9th Cir. 2004). "As long as the unsecured creditors are no worse off because the debtor, and consequently the estate, has received an amount reasonably equivalent to what it paid, no fraudulent transfer has occurred. Congrove, 222 Fed.App'x at 454 (quoting In re Jeffrey Bigelow Design Grp., Inc., 956 F.2d 479, 484 (4th Cir. 1992)).

Suhar v. Bruno (In re Neal), 541 Fed.App'x 609, 611-12 (6th Cir. 2013) (unpublished).

Reviewing the facts, the court is not convinced that the Deposit and the $60,046.40 transfer were in exchange for one another. While Defendant did deposit $169,000.00 into the joint checking account in April, she used it to pay living expenses over the course of the next three months, as shown by Defendant's own tracing. (Def.'s Resp., Ex. E, ECF No. 13-5) On July 31, 2014, the joint checking account balance was just under $36,000.00. According to Defendant, $11,440.00 of this amount is traceable to Geary Street. The next day, Debtor transferred $25,000.00 to Defendant, thereby depleting the Geary Street funds completely. Thus, when Debtor made Transfer #1, Defendant had nothing remaining from the Deposit to give Debtor in exchange. Most of it was spent on living expenses and what was left was part of a separate transfer from Debtor to Defendant that the Trustee does not seek to recover. The court cannot accept Defendant's argument that funds given three months prior to Transfer #1, which were spent in support of the entire family and depleted by the time of the transfer, constitute value for any of the transfers.

Moreover, the $60,000.00 transfer came from the parties' joint savings account, not the joint checking account where Defendant's deposit was made. On April 21, 2016, the balance in the account was $65,307.11. Shortly after, $5,000.00 was transferred to the joint checking account and used to pay living expenses. After this time, the account was not used. The balance in this account remained steady until Debtor transferred the full balance of $60,046.40 to Defendant on July 31, 2016. None of Defendant's Deposit was in this account. The court points this out to conclude that Defendant's Deposit into the joint checking account indicates an intention to use that money to pay expenses, not to save, thereby bolstering the conclusion that the $60,046.40 transfer was not intended to be an exchange for the $169,000.00 deposit. Defendant's position ignores the origins of Transfer #1, consisting of Debtor's funds from the savings account. None of the Deposit was intermingled.

Defendant also argues that she provided value after the transfer through payment of household expenses for the family. Section 548(d)(2)(A) prevents her from claiming that she accepted the money for an *unperformed* promise to provide support but does not prevent her from arguing that actual support provided counts as support. Courts have accepted the payment of living expenses as reasonably equivalent value. Brennan v. Slone (In re Fisher), 296 Fed.App'x 494 (6th Cir. 2008) (unpublished); Schilling v. Montalvo (In re Montalvo), 333 B.R.

145 (Bankr. W.D. Ky. 2005). If she is correct and did pay expenses, the net effect to the estate would be neutral because creditors received the benefit of the transfer. Thus, the court must examine what happened to Transfer #1 once it reached Defendant. The court does this by tracing using a first in/first out methodology for comingled funds. *See generally* In re Greer, 2016 WL 4260077 (Bankr. N.D. Ohio 2016) (unpublished); In re Perkins, 2011 WL 4458961 (Bankr. N.D. Ohio 2011) (unpublished); Covey v. Godwin (In re Godwin), 2015 WL 4505780 (Bankr. C.D. Ill. 2015) (unpublished). Since Defendant was transferring funds from the savings to the checking as she needed funds, this methodology is apropos.

For a time, the $60,046.40 transfer remained intact in Defendant's individual savings account. The balance as of September 7, 2014 was $60,056.34. (Def.'s Depo. Ex. 18, ECF No. 11-2) In September, Defendant started to expend the funds from Transfer #1 in her individual savings account. On September 29, 2014, she transferred $7,000.00 to her checking account, used to pay living expenses. (Def.'s Depo. Ex. 19, ECF No. 11-2). She moved another $5,000.00 on November 3, 2014. (Def's. Depo. Ex. 20, ECF No. 11-2) Between November 14, 2014 and November 24, 2014, additional transfers and withdrawals from the account totaled $48,050.00. (Id.) By December 4, 2014, the balance in the checking was $28.63. (Id.) Through several transactions, all but $28.63 of Transfer #1 was moved to Defendant's individual checking account.

On November 13, 2014, the individual checking account balance was $10,299.83. None of these funds are traceable to Transfer #1 but were comprised of deposits from unknown sources. Debtor continued to use the account to pay expenses. On November 14, 2014, she transferred $35,000.00 from her savings account to the checking, bringing the checking account balance to $45,257.60. (Def.'s Depo. Ex. 21, ECF No. 11-2) Depletion of the $35,000.00 began on November 20, 2014 with payment of a $3,800.00 check. Defendant made additional transfers from the savings account before Debtor filed bankruptcy on December 1, 2014. As of the filing date, Defendant's individual checking account had $37,890.01 in it. The court finds that $33,500.85 of this balance is traceable to Transfer #1. This unspent amount does not qualify as value for Transfer #1, thereby defeating Defendant's defense under 11 U.S.C. § 548(c).

### ii. Transfer #2

Defendant offered minimal detail about Transfer #2, the $3,000.00 check from Debtor. Based on the exhibits attached to Defendant's deposition, it appears the check may have been deposited into her individual FirstMerit checking account as part of a $4,729.00 deposit on September 12, 2016. (Def's Depo. Ex. 19, ECF No. 11-2) Based on the bank statements, it appears that Defendant was using this account to pay living expenses, including food and retail purchases and insurance and utility payments. She testified it was likely used for living related expenses and this seems plausible. Consequently, the court does find she gave value for this transfer. Its contemporaneous nature, coupled with Defendant's consistent use of this account to pay living expenses, convinces the court that she took this transfer for value.

B. Good faith

The District Court for the Northern District of Ohio adopted a hybrid test for analyzing a good faith defense under § 548(c), requiring the court to look at "the subjective intent of the transferee in light of objective factors, such as [] knowledge of the presence of the 'badges of fraud' or 'red flags' that should have put him on inquiry notice." Bash v. Textron Fin. Corp., 524 B.R. 745, 759 (N.D. Ohio 2015) (citing Tabor v. Kelly (In re Davis), 2011 WL 5429095 (Bankr. W.D. Tenn. 2011)). It adopted a tripartite test that (1) the transferee's actual knowledge concerning the transferor's insolvency or fraudulent intent and whether that information was sufficient to warrant inquiry; (2) when inquiry is warranted, whether the transferee engaged diligent inquiry, and (3) if no fraud was revealed through the inquiry, would the fraud or insolvency come to light under a reasonable investigation. Id. As proponent of the defense, Defendant bears the burden of proof. Id.

Defendant's subjective intent indicates she acted in good faith. She understood the new accounts were opened on the advice of counsel in order to segregate her money. (Def.'s Depo. 53:3-8; 11-14, ECF No. 11-1). Since she had contributed such a sizeable amount to the joint accounts, it was not unreasonable for her to believe that she had an interest to protect. There is no evidence that, at the time of Transfer #1, Defendant had actual knowledge of her husband's insolvency or any fraudulent intent in making the transfer. She testified that, at the time of the transfer, she did not believe her husband was contemplating bankruptcy and was negotiating his fines with a regulatory authority. (Id. at 53:21-25) The court is further convinced of her good faith by the uncontroverted testimony that she declined to sign an affidavit that contained incorrect information about the opening of her individual accounts. (Id. at 54:23-55:5) Her refusal to coalesce with her husband's statement was a factor in his discharge waiver.

Reading the entirety of her deposition, the court is convinced that the parties' marriage was characteristic of thousands of others where one spouse exercises greater knowledge and control over certain matters, like finances, and does not make the other spouse aware of the specifics, for any number of reasons. For an equally unknown number of reasons, the "in the dark" spouse acquiesces to this arrangement. Myriad marriages have made this work. A marriage involves trust and acceptance. Within the confines of their marriage, the court is persuaded that Defendant's actual knowledge at the time of Transfer #1 was not sufficient to put her on inquiry notice of the Debtor's fraud or insolvency. The court accepts that Defendant accepted the transfer and provided value in good faith.

## CONCLUSION

Trustee sought summary judgment on her actual and constructive fraudulent transfer claims. To meet the summary judgment standard, she bore the initial task of showing the absence of material issues of fact. She succeeded in establishing transfers occurred with Transfer #1 and #2 but did not meet her burden with regard to Transfer #3. Consequently, summary judgment is denied with regard to that claim.

Trustee also proved all the transfers were made in the requisite time periods. She

demonstrated that Transfer #1 was made with actual fraudulent intent and, through the badges of fraud, also established actual fraudulent intent for Transfer #2. Consequently, the court finds that Transfers #1 and #2 were fraudulent under 11 U.S.C. § 548(a)(1)(A).

Defendant argued that the transfers were not recoverable by Trustee under § 548(c). The court agrees, in part. While it does not accept her argument that she provided value with the Deposit, she did provide partial value for Transfers #1 and #2 by paying the parties' living expenses from the transfer after she received it. However, based on the court's calculations, not all of Transfer #1 was expended at the time Debtor filed bankruptcy and $33,500.85 remained. Defendant did not provide value for this amount. To the extent funds from the transfer remained in Defendant's possession as of the filing date, those amounts cannot constitute value under § 548(d)(2)(A). The court further finds that Defendant acted in good faith as transferee.

In sum, Trustee's motion for summary judgment will be granted, in part, for Transfer #1 and denied for Transfers #2 and #3. An order and judgment in accordance with this decision will be issued immediately.

So ordered.

#     #     #

**Service List:**

Bruce R. Schrader, II
Roger J. Stevenson
Roetzel & Andress
222 S Main Street
Suite 400
Akron, OH 44308

Jack B. Cooper
Day Ketterer
200 Market Ave N
#300
Canton, OH 44701-4213